### UNITED STATES v. JESSUP.

*(District Court, D. Maryland. March 24, 1883.)*

1. INDICTMENT FOR TAKING EXCESSIVE FEE IN PENSION CASE—ACT OF JUNE 20, 1878.

    *Held,* that the penalty provided by Rev. St. § 5485, is applicable to act of June 20, 1878. entitled, "An act relating to claim-agents and attorneys in pension cases."

2. AMENDATORY ACTS TO REVISED STATUTES—HOW CONSTRUED.

    *Held,* that amendatory acts of congress are to be construed as enacted with reference to the existing system of laws on the subject to which they pertain, and, if possible, to be construed as part of that system.

Demurrer to Indictment.

*A. Stirling, Jr.,* for the United States.

*J. Morrison Harris,* for Jessup.

MORRIS, J. This indictment charges that the traverser in May, 1880, did unlawfully demand and receive from a pensioner of the United States for services in a pension-claim case a greater sum than

$10, to-wit, $1,400, contrary to the statutes of the United States. The question raised by the demurrer is whether there was any penalty for taking a greater fee than allowed by law for prosecuting a pension claim after the passing of the act of June 20, 1878, and prior to the act of March 3, 1881. It is a question which the reported decisions show has been decided both ways by federal courts. It was ruled by Judge GRESHAM in a well-considered opinion reported in *U. S.* v. *Dowdell,* 8 FED. REP. 881, that the penalty provided by section 5485 of the Revised Statutes was applicable to the act of June 20, 1878. The contrary was held by Judge BAXTER in *U. S.* v. *Mason,* 8 FED. REP. 412, and by Judge NIXON in *U. S.* v. *Hewitt,* 11 FED. REP. 243.

Looking at the purpose of the legislation on this subject it appears certain that in passing the act of June 20, 1878, reducing the fee which an attorney could receive in any pension case to $10, congress assumed that the penalties prescribed by section 5485 were applicable, and intended that they should be, and that such was in fact the legal effect of the enactment would have seemed to me equally plain but for the decisions of the two very experienced and able judges who have held otherwise.

Under the "Title 57, Pensions," in the Revised Statutes, there were codified and brought together all the then existing provisions of law relating to pensions, and under "Title 70, Crimes," was placed as section 5485, the section of the original statute providing the punishment of agents or attorneys who should violate the section forbidding them to take a greater fee than the pension law allowed. The title 57 then contained all the laws on the subject of pensions, so that when section 5485 declared what penalty should be inflicted for taking a greater fee "than is provided in the title pertaining to pensions" it was equivalent to declaring the penalty for taking a greater fee than was provided by the laws relating to pensions.

The act of June 20, 1878, was entitled "An act relating to claim agents and attorneys in pension cases." By it congress repealed section 4785 of the title pertaining to pensions, and in lieu thereof, and by an enactment plainly intended as a substitute for it, declared it to be unlawful for an agent or attorney to take a greater fee in any case than $10, which was a less sum than had been allowed in some cases under section 4785. I think that the act of June 20, 1878, was intended to be, and became a part of, the general system of law pertaining to pensions as contained under that title in the Revised Statutes, and section 5485 was also part and parcel of that system. That section 5485 was placed under the title "crimes" was a mere

convenience of location, and nothing more, as is declared by section 5600.

When in the Revised Statutes there is found a general system of law regulating a subject it would seem that subsequent legislation by congress on the same subject must be understood as enacted with reference to that system, and to be construed as part of it if it can be so construed. This was held by the supreme court in *Wilmot* v. *Mudge*, 103 U. S. 217. As stated in that case there was a clause of the brankrupt act of 1867, by which it was declared that no debt created by fraud should be "discharged under this act." In 1874 congress legislating on the subject of bankruptcy passed an act providing for a composition proceeding which should discharge the bankrupt, and declared in express terms that the composition should be binding *on all creditors*. Notwithstanding the positive language of this last act it was held that under it debts created by fraud were not discharged, and for the reason that all the statutes, sections, and provisions passed by congress on the subject of bankruptcy were to be interpreted as parts of one entire system, and if possible by any reasonable interpretation all were to be made to stand together.

If the present case were of a civil nature it would hardly be contended, I think, that the act of 1878 is not to be construed as part of the system of law relating to pensions, nor that congress supposed and intended that what by that act was declared unlawful was not to be punished by the penalties denounced against the same offense by the penal section of that system.

It is urged, however, that in a criminal case a law so highly penal is to be construed strictly, and is not to be enlarged by construction. If the act of 1878 is a part of the general law relating to pensions, there is no room for construction and no doubt as to the punishment prescribed by congress for doing what it declared to be unlawful. To hold that the act of 1878 did not become, as soon as it became a law, a part of the general system of law relating to pensions is, it seems to me, to defeat the clear intention of congress, and to adopt a rule for construing amendments to the Revised Statutes which would soon, by creating unnecessary doubts and difficulties, destroy the usefulness and certainty of that code of laws. Under such a rule of construction, unless in every instance in which congress undertakes to make any change in any section of the Revised Statutes relating to penal offenses the most exact care is exercised to observe in what language other sections refer to the section to be altered, and how the penal sections in other parts of the Code refer to the offense, there would always

be a likelihood of some loophole through which the crime would escape punishment.    If subsequent acts are to be interpreted as having been passed without reference to the sections of the Revised Statutes regulating the same subject, the advantages of a codification of the laws will soon be lost, and the purposes of the codification defeated.    I think it is important, not unnecessarily, to adopt a rule leading to such consequences.    A case involving a difficulty somewhat of this nature recently came before the circuit judge of this circuit, and is reported in 13 Fed. Rep. 798, (*U. S.* v. *One Raft of Timber.*)

While examining this question, having occasion to turn to section 5485, I notice that the following sections, 5488 to 5493, relate to the punishment of defaulting disbursing officers of the United States, and that section 5494 provides that a transcript of the books of the treasury shall be sufficient evidence of the balance due by the officer, upon a trial under the provisions of "the six preceding sections." Should congress repeal one of those six sections for the purpose of re-enacting it with some trifling change, it seems to me it would be overstrained to say that the rule of evidence provided by section 5494 was not to be applied to the new act because it was not literally one of the "six preceding sections" to which by its terms section 5494 applies.    Other instances will, I think, readily suggest themselves to any one familiar with the Revised Statutes.    If the rulings in the two cases hereinbefore cited in which contrary views on this question now before me have been held, were binding upon me, I could cheerfully yield to them as authorities, or if after considering those decisions I could say that I felt a doubt as to the interpretation of the law I should give the traverser the benefit of that doubt, but this is a case in which it is my duty to exercise my own best judgment and decide accordingly, notwithstanding any natural distrust of my own conviction because it is opposed to that of two judges of such known learning and ability.

Demurrer overruled.